The argument this morning is 18-1087, Page v. Wilkie. The argument this morning is 18-1087, Page v. Wilkie. Thank you, Your Honor. May it please the court, I'm here on behalf of Mr. Page, Mr. Barry Page, and I wanted to talk about, kind of to supplement my brief a little bit, that there was a and inform the court that there was a recent case from this court that come out after the briefing was done. That case was Saunders v. Wilkie, S-A-U-N-D-E-R-S-W-I-L-K-I-E. The docket number is 2017-14-66 from this court, and it was decided April the 3rd, 2018. And that case addressed really what's at issue in this case. I just want to be clear, I don't recall it off the top of my head. Was that a precedential opinion or a non-precedential? It was a precedential opinion. Okay, it was a precedential opinion. Mr. Jones, why do we have jurisdiction over this appeal? Isn't it fact-based? What the court said in Saunders was that... Whether there's a separate diagnosis of chronic fatigue separate from the cancer treatment, that's a question of fact. What the court held in Saunders, they had this very similar issue in Saunders. And in that particular context, it was a lady who complained of knee pain, but there was no separate underlying condition. And just like in this case, both the board and the Court of Appeals of Veterans Claims held, well, she doesn't have a disability as a matter of law. And what the court in Saunders said was that because you're dealing with what is the definition of a disability under the law, then that makes it a legal question, which would give this court jurisdiction. And we also think that on the merits of the case, the Saunders case, held that the definition of disability does not require a diagnosis. Instead, what they said what was necessary was to demonstrate... What they said the focus under 38 U.S.C. 1155 was the focus was on loss of earning capacity. And that's what the purpose of the veteran's law, of the veteran's compensation statutes are designed to compensate the veteran for. And in this case, it is undisputed from the medical evidence and also from the findings of the court of the board and of the Court of Appeals of Veterans Claims that Mr. Page's chronic fatigue and weakness is enough to prevent him from working, and that's an undisputed fact. So what we think is that in light of this, particularly in light of the Saunders case, is that the board and what the board and the Court of Appeals of Veterans Claims actually did decide, which is that Mr. Page doesn't have a separate compensable disability, but otherwise he would meet the requirements. And if Saunders requires the veterans court to consider loss of earning capacity, then clearly that's a legal error. The Court of Appeals of Veterans Claims did not apply the correct legal standard. I'm a little bit at a disadvantage because I don't recall off the top of my head the Saunders case. But dealing with this case, you say, I think one of your arguments is that the Court of Veterans Claims construed your argument incorrectly. Like you were not saying you need to be compensated as kind of a separate category. This is an add-on to a consequence of the surgery, et cetera. One of my arguments was that the Court of Appeals of Veterans Claims and the board construed the claim solely in the context of whether or not Mr. Page had chronic fatigue syndrome, which the medical examiner found that he did not have chronic fatigue syndrome, but instead that they should have been. But what the medical evidence ended up did say was that he does have chronic fatigue and weakness that is related to the radiation treatment and that it's enough to prevent... But that claim, your client is currently getting 100% on that, right? That's correct. That's correct. There's been some sort of proposal to decrease that, but that hasn't happened to date, right? I know you requested a hearing on some proposed... In fact, I will inform the court that the regional office just very recently just issued a rating decision keeping it at 100%. Of course, that would not be in the record. That was maybe decided a couple weeks ago from the regional office. I guess just to kind of get to the point, what's the gripe here? I mean, until or unless your client's disability rating is decreased, you've got what you're seeking, kind of on the basis of what you're seeking, which is the result of his... Of course, there are elements where you can certainly get higher than 100% based upon aid and attendance and special monthly compensation issues that the more disabilities that you have, the more you could use that as a step higher for special monthly compensation purposes. I don't know. So what are you seeking in our case? Well, I'm seeking essentially that I believe that the fatigue and weakness is not contemplated within the ratings for that, and that the law then requires you to give the highest ratings possible. You mean more than 100%? Well, like I said, Your Honor, the more disabilities that you end up that you have, the more you could use those disabilities as stepping stones for higher levels of special monthly compensation so that could affect the compensation payable on that basis. Okay. I'm trying to pull this apart a little bit. So the first thing that came to this appeal was a claim that said chronic fatigue syndrome. That's correct. And then the briefing in this case to the board and to the Veterans Court seemed to be talking about fatigue, severe fatigue, which was a secondary condition due to all the chemotherapy, due to the service-connected lung cancer. That's correct. But then the lung cancer service-connected disability rating has been at 100%. That's correct. Although there were proposals to move it down off of 100%, it's been brought up to 100%, and now you're telling me that the VA has confirmed it's going to keep it at 100%. That's correct. I said yes. They just recently decided that in the last couple of weeks. You wanted a hearing that the VA had not properly given you, and so I guess we were wondering and waiting to see whether in fact you were going to get that hearing. But it turns out that the VA chose not to hold the hearing because it chose to give Mr. Page everything that he requested, which is 100%. On his lung cancer, that's correct. And so now you're asking to get recovery on something separate and apart from the lung cancer for fatigue, but not chronic fatigue syndrome. That's correct. Okay, so is there, I don't know, a diagnostic code or something for something that is related to fatigue that is not chronic fatigue syndrome, nor something that is connected to treatment that was due to the service-connected lung cancer? Well, first of all, if there's no specific diagnostic code, and you're supposed to use analogous ratings, and there are analogous ratings. There are analogous ratings that you could use, such as to rate fatigue, such as for chronic fatigue syndrome, even though that's not what it is. But they certainly do have the authority to use analogous ratings, and that's what they would have to use in this particular case. So, just to clarify a piece of what Judge Chen was asking about, this proposal to decrease the 100% to 30%, which has now been tossed aside, what was the basis for that? The basis for that is that under the rating schedule for residuals of lung cancer, Mr. Page had required outpatient oxygen therapy. And so under the rating schedule for residuals of lung cancer, that would entitle him to 100% rating. Is there any more questions for this court? No, why don't we get the government and we'll reserve the remand. Good morning. May it please the court. The processes available to Mr. Page, administrative processes available to him, he's availed himself of, and they've worked. He's had medical exams, he's had ratings assigned, he's challenged ratings when they've gone down, they've gone back up again. Well, what about this world of the consequences of his fatigue related to his cancer and the surgery? Yes, Your Honor. The fatigue has always been present in the medical exams and a part of the ratings that are attached to the lung cancer. It's part of the disability from the treatment. That stuff is covered in the 100, possibly 30, now back to 100. That's correct, Your Honor. Is there a record that sort of talks about that as being included, a record on that kind of disability designation that includes fatigue, etc.? Your Honor, in the appendix, both the supplemental appendix and the appendix that Mr. Page filed, in the medical reports, you can see findings on fatigue when examining Mr. Page for the ratings that came in 2014, 2015. Is it the government's position that what he is seeking here, or what he's saying he's really seeking here in the Court of Federal Claims, Veterans Claims misunderstood, is what he's already being compensated for in the 100% disability? I think that's correct, Your Honor. As Judge Chen noted, the claim here originally presented itself as a claim for chronic fatigue syndrome. The symptomology didn't support diagnosis of chronic fatigue syndrome. Persistent fatigue was noted as an element of residual to his treatment. In the briefing, it switched from chronic fatigue syndrome now to this notion of persistent fatigue, which is a set of symptoms. As we noted in our brief, a symptom like fatigability, it can't be carted from silo to silo of disability rating to support multiple symptoms. It's a part of the analysis of the effects of the lung cancer and of the treatment. It's part of what makes it debilitating, is that fatigue. We have all kinds of different cases here, and they overlap and get confusing, and you're talking about silos. We've got a TDIU silo. How does that play into, if it had been alleged or whatever? But if he claims, I'm not employable because of the excessive fatigue or whatever, isn't there a possibility of getting something more than 100% in those circumstances? To give a court an update on where he stands now, there is a TDIU finding, and it's connected to, he has a PTSD rating of 70% right now. He has a lung cancer rating at 100% because the lung cancer went back into active status. That happened recently, February 2018, I think is when that rating came. He has a 60% rating for a skin condition, 60% rating for arteriosclerosis. He's also receiving special monthly compensation. However, and you can see from the record, when there was that time in 2015 where the rating went from 100 to 30, because he was post-treatment and that was the recommendation, that in fact it only dropped to 90 because there were other diagnoses and other disabilities that added to that 30 and kept it at 90 for that brief period. But if he's arguing, you were telling us about TDIU, so if he's arguing for TDIU, has that been adjudicated specifically? That's a separate claim, right? Yes, I believe that he has TDIU right now. He also has special monthly compensation at the aid and attendance rate. He has three active claims in the administrative processes seeking a higher rate of special monthly compensation an earlier date. There's also this issue of a potential spine injury. Is TDIU equivalent to 100%? In other words, total? Yes, he has total disability right now. Total equals 100%? Yes. I thought that maybe it was more... Well, I think the special monthly compensation he gets, and the TDIU he gets a little bit more, I think, than the 100%. His counsel might know better exactly what he's receiving right now. They're not equivalent terms? No. TDIU is a term of... Total disability for individual unemployment. Do you want to speak to the Sanders case? I'm not familiar with it, and from the description of it, about definition of disability, I think that the issue here, and the record here, points exclusively to factual issues and examinations, and how this was rated by the doctors who examined him, and then taking those examinations and assigning the ratings. It's not about defining a new disability of persistent fatigue, which seems to be where his briefs are headed towards. There's no basis to do that, and this court doesn't have jurisdiction to invent new rating systems, or alter the ratings that exist. Fatigue, as we stated in the brief, is a symptomology that can align with numerous disabilities or maladies. It can only align with one when assigning a rating, and that's what happened here. He did not present with chronic fatigue syndrome. The fatigue was accounted for in the assessment of his cancer, and he's receiving everything that he can receive right now. If that changes, as I mentioned at the outset, with the processes that are available to him, the venue for dealing with that is through those processes. He can challenge a rating if his fatigue remains, but he gets better on the lung cancer. That can be addressed. Dinosaur remains available. Is it your view that to the extent Mr. Page's briefing is seeking recovery for fatigue that stems from the treatment for his service-connected lung cancer, that issue, that challenge has been mooted by the fact that he's now getting a 100% confirmed disability rating for lung cancer? It's interesting. I've spent some time thinking about it. There's a mootness and potentially even a ripeness issue, because if there's a change in the way his condition is presenting itself in terms of the cancer and the fatigue, then it will take a new diagnosis, a new examination, to try to see to what extent the fatigue remains if other things have... I don't think it was a ripeness argument, too, but that was only because I thought the 30% thing was pending. There's no appeal, right? I mean, whatever your friend said has been done in terms of the RO affirming the 100%, there's no further adjudication of that. His disease went back into active status, and so he's at 100%. And that supersedes what had happened before. And if it goes down after treatment, because there are specific protocols, you can see it from the record from what happened before, post-treatment, certain time periods, there'll be re-evaluations, and that 100% may go down, if hopefully he gets better. But you're telling us that that rating accounts for the fatigue associated with... That's correct, your honor. It's the fatigue that's residual to the treatment. Are there no further questions? Thank you. I wanted to correct, first of all, under 4.97, I think it's 4.97, which is the how do you rate residual lung cancer. It doesn't talk about fatigue or weakness. All it does is it or unless you can get it 100% if you have pulmonary hypertension, core pulmonary, which is kind of a heart issue, or require outpatient therapy, but it really doesn't talk about fatigue and weakness. And also whenever he... The initial recommendation for the decrease was based solely upon how he performed on a lung function test. The examinations where they talked about fatigue and weakness were not examinations pursuant to a re-evaluation for the lung cancer, but were instead conducted pursuant to the claim that we filed for fatigue. So I wish to correct that. Does the court have any more questions for me? Thank you. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.